**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**KAREN WILSON and**
**ELIZABETH JEAN SETTLES**                                                         **PLAINTIFFS**

**v.**                              **Nos. 4:04CV00086-WRW**
                                **4:05CV00887-WRW**

**JOHN E. POTTER,**
**POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE**                                    **DEFENDANT**

## ORDER

Pending is Defendant's Consolidated Motion for Summary Judgment.[1]  Plaintiffs both

bring their cases under Title VII of the Civil Rights Acts of 1964, alleging race-based disparate

treatment.  Plaintiff Wilson also alleges  hostile work environment and retaliation claims.

For the reasons set forth below, the Consolidated Motion for Summary Judgement is

DENIED in part and GRANTED in part.

**I.      Background**

Ms.  Karen Wilson ("Wilson") is an African American -- employed by Defendant since

February 18, 1986.  Ms. Elizabeth Settles ("Settles") is an African American -- employed by

Defendant from June 22, 1974, to December 30, 2004.

In October 2000, a Dispute Resolution Specialist ("DRS") position became available in

the Equal Employment Opportunity ("EEO") Department.  In January 2001, four individuals

were selected to interview for the position.  Among them were Settles, Wilson, and Ms.

Pemberton -- a Caucasian female.  Sam Alexander, Defendant's EEO Dispute Resolution

---

[1]Doc. No. 32.

Manager, recommended  Settles for the position.  However, Ms. Pemberton ("Pemberton") was chosen by the District Human Resources Manager.

 Pemberton worked in a department that was eliminated for budget reasons.  The Postal Service has a reduction-in-force ("RIF") policy that allows noncompetitive placement of employees, who are terminated because of cut-backs.  Defendant asserts that Pemberton was placed in the DRS position to avoid a RIF termination.  Plaintiffs contend that the assignment was too late to comply with RIF avoidance, and they point to other procedures that were not followed when Pemberton was given the job.

In addition to a disparate treatment claim, Wilson alleged a hostile work-environment beginning in 1996 and continuing until April 2001.  Wilson also alleged that, after she filed her EEO complaint, she was subjected to retaliation when her work environment became worse.

In June 2003, Settles discovered that she was passed over for the DRS promotion, even though she was chosen as most qualified.  Settles contacted an EEO counselor on July 1, 2003 about possible discrimination.  Later, she filed a formal complaint and an appeal -- both were decided against her.  This action was filed on June 16, 2005.[2]  Settles alleges that her exhaustion of administrative remedies was timely because she did not learn that she was selected as the most qualified candidate until June 25, 2003.  Defendant concedes that Settles' claim would be timely if she was unaware of the discrimination at the time it took place.

---

[2]In its Consolidated Motion for Summary Judgment, Defendant does not raise the issue of exhaustion of Settles' claim.

## II.    Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3]   The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[5]   Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6]   This court must view the facts in the light most favorable to the party opposing the motion.[7]   The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

## III.   Discussion

### A.   Disparate Treatment

#### 1.   Authority

Plaintiffs' disparate treatment claims are based on indirect evidence, and must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[10]  Under this analysis, Plaintiffs must first establish a *prima facie* case of discrimination.  In a failure-to-promote claim, Plaintiffs must make an initial showing that (1) they are members of a protected class; (2) they were qualified for the position; (3) they were denied the position; and (4) the employer selected a similarly situated person who was not a member of the protected class for the position.[11]

At the *prima facie* stage, Plaintiffs' burden of showing that they are similarly situated to other job applicants is not "onerous."[12]  Employees applying for promotions are similarly

---

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

[10]411 U.S. 792 (1973).

[11]*Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005).

[12]*Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir.2004) (*quoting Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir.1994)).

situated where they meet the minimum qualifications for the position.[13] "Whether the applicants' experience and qualifications were in fact a legitimate basis for the [employer's] decision is more relevant to the issue of pretext than the plaintiff's *prima facie* burden."[14]

Once Plaintiffs meets this initial threshold, a presumption that the employer "unlawfully discriminated against the employee" arises.[15]  The burden of production then shifts to the employer, who must state some legitimate, nondiscriminatory reason for the employment decision.[16]

If the defendant states a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[17]  When the defendant meets this burden, the plaintiff must have "a fair opportunity to show that the stated reasons for [the employment decision] was, in fact,  pretext,"[18] or were not true.[19]

---

[13]*Peterson v.  Scott County,* 406 F.3d 515, 523 (8th Cir.  2005) (*citing Ottman v. City of Independence, Mo.*, 341 F.3d 751, 757 (8th Cir.2003)).

[14]*Id.*

[15]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[16]*McDonnell Douglas*, 411 U.S. at 802.

[17]*Hicks*, at 507.

[18]*McDonnell Douglas*, 411 U.S. at 804.

[19]*Hicks*, 509 U.S. at 508; *see also Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

It is well established that "Title VII claims may be 'subject to waiver as well as tolling when equity so requires.' "[20]   "[E]quitable tolling is a remedy reserved for circumstances that are truly beyond the control of the plaintiff."[21] This doctrine will extend a deadline missed due to an employee's excusable ignorance.[22]  The Sixth Circuit has set forth five factors that help determine if equitable tolling is appropriate in a given case: (1) whether a plaintiff lacked actual notice; (2) whether the plaintiff lacked constructive notice, i.e., should have known; (3) the diligence with which a plaintiff pursued her rights; (4) whether there would be prejudice to the defendant if the statute were tolled; and (5) the reasonableness of the plaintiff remaining ignorant of his rights.[23]

### 2. Analysis

Settles lost the promotion in 2001, but did not file her EEO claim until 2 years later, well after the 45 day deadline.  However, Settles maintains that she was not aware of the discrimination until she discovered that she, not Pemberton, was selected as the most qualified candidate.  In view of this, the statute of limitations is tolled due to her excusable ignorance.  I believe her claim was filed in time, i.e.,  when she reasonably became aware that she had lost a promotion to an allegedly less qualified applicant.

---

[20]*Hamilton v. West*, 30 F.3d 992, 993 (8th Cir. 1994) (*quoting Zipes v. TWA*, 455 U.S. 385, 393-98 (1982)).

[21]*Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 798 (8th Cir.1998) (internal quotation omitted), cert. denied, 525 U.S. 1139 (1999).

[22]*Hamilton*, 30 F.3d at 994.

[23]*Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988).

Plaintiffs assert that Defendant discriminated against them based on their race by failing to promote them to the DRS position in 2001. Defendant concedes that Plaintiffs satisfy the first three elements of the *prima facie* case.[24] However, Defendant contends Plaintiffs cannot show that they were similarly situated to Pemberton, because she was subject to RIF avoidance policies, and Plaintiffs were not.  Therefore, argues Defendant, Plaintiffs fail to establish a *prima facie* case, but it is mistaken.

Based on the holding in *Peterson v. Scott County,*[25] the issue of  Pemberton's RIF status is relevant to the issue of pretext, not Plaintiffs' *prima facie* burden.  The only facts relevant to the "similarly situated" element in these claims, are Wilsons' and Settles' qualifications, and there is no dispute that they met the qualifications.[26]  So, Wilson and Settles produced sufficient evidence to create a  *prima facie* case.  Thus, the ball moves to the Defendant's court to come up with a non-discriminatory reason for the Pemberton's promotion.

Defendant offers evidence that  Pemberton's promotion was a legitimate exercise of the Postal Service's RIF policies.[27]  Evidence offered by Wilson and Settles that RIF procedures

---

[24]Doc. No. 33.

[25]406 F.3d at 523.

[26]Defendant's Exhibit O (showing that all three women were recommended for the position by the Review Board).

[27]Defendant's Exhibit N (deposition of Ms. Lucy Bates, manager of human resources); Defendant's Exhibit W (deposition of Ms. Bobbie  Pemberton); Defendant's Exhibit X (deposition of Ms Carol Garvey, Southwest area manager at time of Ms. Pemberton's promotion); and Defendant's Exhibit Y (Memo from Ms.  Pemberton requesting to be non-competitively assigned to the DSR position).

were not followed, counter this explanation for Pemberton's promotion and create a reasonable inference of pretext.[28]

After reviewing the exhibits and depositions, it is evident that both sides have sufficient evidence to create a genuine issue of disputed material fact concerning the legitimacy of Pemberton's promotion.  This dispute is for a jury to resolve.

Defendant's Motion for Summary Judgment based on Settles and Wilson's disparate treatment claims is DENIED.

**B.  Wilson's Hostile Work Environment Claim**

Wilson alleges she was subjected to a hostile work environment since 1997.[29]  Defendant argues that Wilson waived the right to assert a hostile work environment claim because she did not exhaust the claim and did not file the claim within the required time limit.[30]  Finally, Defendant asserts that -- even if Plaintiff meets the exhaustion and statute-of-limitation requirements -- she doesn't establish a hostile work environment *prima facie* case.

**1.     Exhaustion**

**a.  Authority**

Before the federal courts may hear a discrimination claim, an employee must fully exhaust her administrative remedies.  Federal employees must meet with an Equal Employment Opportunity (EEO) counselor within 45 days of the alleged discriminatory conduct and make an

---

[28]Plaintiff's Exhibit 1(e) and 5 (U.S.P.S policy documents which indicate that reduction-in-force procedure was not followed when Ms. Pemberton was given the DRS position).  See also, Agency Exhibits Q, at 1-2, and N at 15-17, 27.

[29]Doc.  No.  11 (Amended Complaint filed July 3, 2004).

[30]Doc. No. 41-1, p. 1-2.

informal complaint.[31]  If the matter is not resolved informally, the employee may file a formal

EEO complaint.[32]  To determine if a plaintiff has properly raised charges at the administrative

level, courts should be guided by the principle that charges filed by non-lawyers should not

result in dismissals of "subsequent complaints based on technicalities or the failure to use the

exact wording required in legal pleading."[33]

Because of the informal nature of the administrative  process, and in view of the legal

inexperience of employees, administrative complaints are construed liberally.  Thus, a plaintiff

may seek relief for any discrimination that grows out of or is like or reasonably related to the

allegations in the administrative charge.[34] Applying this standard to the federal procedure, a

reasonably related claim does not need to be separately presented to an EEO counselor.[35]

### b.  Analysis

Wilson met with an EEO counselor and filed her informal complaint in April 2001 after

discovering that a 1997 threat assessment report played a role in the loss of the promotion, and

her transfer out of the EEO department.

The threat assessment report concerned a conflict that took place at a staff meeting

between Wilson and a co-worker, Gary Allinson ("Allinson").  Wilson alleges that the report's

conclusions were biased because it recommended her removal from the EEO department, despite

---

[31] 29 C.F.R. § 1614.105(a)(1); *Burckett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003). *See also Jensen v. Henderson*, 315 F.3d 854, 858 (8th Cir. 2002).

[32] 29 C.F.R. § 1614.106.

[33] *Haithcock v.  Frank*, 958 F.2d 671 (1992).

[34] *Sutton v.  Rumsfeld* 343 F.3d 948, 949 (8th Cir.  2003) (*quoting Stuart v. Gen. Motors Corp*., 217 F.3d 621, 631 (8th Cir.2000)).  *See also Lyons v.  England*, 307 F.3d 1092, 1104 (9th Cir.  2002).

[35] *Rennie v.  Garrett*, 896 F.2d 1057, 1062 (7th Cir.  1990).

the fact that Allinson lost his temper with her, used profanity and stormed out of the meeting. The informal complaint also alleges that the biased nature of the 1997 threat assessment report hindered her career opportunities on more than one occasion.  According to Plaintiff, the initial conflict with Allinson set in motion a continuous course of harassment, which made her work-environment intolerable.

Wilson filed the formal charge in July 2001.[36]   On the last two pages of the formal charge, Wilson reveals that after 1997 she was subjected to daily harassment from Allinson, other managers, and co-employees.  With regard to her work atmosphere, Wilson used the term "hostile working environment."[37]

The allegations set out in the informal complaint are reasonably related to more specific allegations made at the formal stage.  Wilson's initial charge opened the door to an administrative investigation of the conflict between herself and Allinson that was first reported and investigated in1997.  The formal complaint elaborates on the 1997 incident and connects it to a continuing course of conduct engaged in by Allinson, other managers, and co-employees.[38] According to the formal complaint, Wilson was "black-balled" by her supervisors and co-workers beginning in 1997.[39] Liberally construing Wilson's administrative charges, her hostile work-environment claim grows out of and is reasonably related to the allegations in the

---

[36]Defendant's Exhibit E.

[37]Defendant's Ex. E, p. 4.

[38]*See Cobb v. Stringer*, 850 F.2d 356 (8th Cir. 1988).

[39]Defendant's Ex.  E, p.  4.

administrative charges.  Plaintiff Wilson properly exhausted her administrative claims before filing an Amended Complaint.

### 2.  Timeliness

Wilson relies on the continuing violation doctrine and contends that the EEO charges filed in 2001 were timely, even though the harassment began in 1997. Defendant maintains: (1) the alleged acts occurred outside the limitations period; and (2) any conduct that occurred within the limitation was not part of a continuing course of conduct, but were a series of discrete acts.

### a.  Authority

Under the continuing violation doctrine, discriminatory acts "will not be time barred as long as all acts which constitute a claim are part of the same unlawful employment practice and at least one act falls within the statutory period."[40] "[A] plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts."[41]

This doctrine is usually applied in cases of hostile work environment because, such a claim involves repeated conduct over a period of time.[42]  A hostile work environment claim is

---

[40]*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

[41]*Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

[42]*Morgan,* 536 U.S. at 103.

considered as a whole because the conduct does not occur on any particular day, but persists "over a series of days or perhaps years."[43]

When evaluating a hostile work environment claim, the timely filing provision requires that a plaintiff file a charge within a certain number of days after the last harassment happened. It does not matter that some component acts of a hostile work environment fall outside the statutory time period.[44]  However, the nature of the conduct determines whether certain conduct is part of a whole, or a conglomeration of separate discriminatory actions.

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire, are easy to identify," and are not tied together under a continuing violation theory.[45] Discrete acts have been defined as conduct that represents an adverse action: "[A]n employer performs a separate employment practice each time it takes adverse action against an employee, even if the action is simply a periodic implementation of an adverse decision already made."[46] In a situation where an employee is subjected to a series of discriminatory adverse actions, each incident of discrimination constitutes a separate unlawful employment practice.[47]

Where specific acts are alleged a new clock starts running. On the other hand, when a workplace is permeated with discriminatory intimidation, ridicule, and insult, conduct that is related and contributes to the workplace environment, it  is considered as one discriminatory

---

[43]*Id.* at 115.

[44]*Wilson v.  Brinker Intern., Inc.*, 382 F.3d 765, 772-73 (8th Cir.  2004).

[45]*Morgan*, 536 U.S. at 114.

[46]*Elmenayer v. ABF Freight System, Inc.*, 318 F. 3d 130 (2d Cir. 2003).

[47]*Id.*

action. A hostile work environment claim is based on the combined effect of a series of interrelated acts.[48] A hostile work-environment is created by a continuing course of conduct--but does not include specific discriminatory acts that a plaintiff can easily recognize as an adverse action.  In order to establish this "continuing pattern," the conduct must be linked.

The continuity of a hostile work environment claim may be destroyed, if there is a significant time gap between the alleged hostile acts, or if the alleged conduct involves different supervisors and co-workers in different offices.[49]  When different supervisors allegedly contribute to the hostile environment, in order to apply a continuing violation doctrine, a plaintiff must show that they acted in concert with a departmental policy.[50]

### b.  Analysis

Under the continuing violation doctrine, Wilson must file a claim within 45 days of the last discriminatory action.  The conduct that can be brought within the required time-frame must be connected to a continuing pattern of conduct engaged in by the same co-workers and supervisors, and can't include a series of discrete adverse actions.

Wilson names three individuals responsible for contributing to the hostile work environment -- Gary Allinson, (a co-worker who allegedly harassed Wilson from 1996 to 1997) Carolyn Sims, (Injury Compensation manager who allegedly continued to harass Wilson from

---

[48]*Id.*

[49]*Cruz v. Coach Stores, Inc*., 202 F.3d 560, 568  n. 4 (2d Cir. 2000); *See* also: *Randal v. Potter* 366 F.  Supp.  2d 104 (D. Me.  2005); *Hollowell v.  Michigan Consolidate Gas Co.*, 50 F.Supp.2d 695 (E.D. Mich.  1999).

[50]*Mack v. Port Authority of New York and New Jersey*, 225 F. Supp. 2d 376 (S.D.N.Y. 2002).

1997 to 2000 ) and Sam Alexander (EEO manager who allegedly harassed Wilson from 2000 forward).

Wilson alleges that Allinson's abusive conduct started in 1996 and ended in 1997 when Allinson was transferred.  Despite the absence of Allinson, Wilson insists that the harassment continued until she filed her complaint.  Wilson alleges that: (1) she was ostracized by co-employees; (2) she was given a greater work-load and subjected to closer scrutiny; (3) was denied full access to the building; and (4) was denied leave requests, training requests, transfer requests, and promotion opportunities.

According to Wilson, because Allinson and Sims were close friends, Sims continued the harassment.  During the time that this harassment took place, Sims supervised Wilson.  Sims' tenure ended in December 2000 when Alexander became Wilson's supervisor.  Alexander continued supervising Wilson, until the EEO complaint was filed.

Wilson complains of continuing mistreatment by Allinson that began in November 1996.[51]  This conduct included insults, ridicule, verbal abuse, physical intimidation, knocking items off her shelf and throwing things.[52]

Wilson does not indicate that Sims, or any other supervisors and co-workers, engaged in a pattern of conduct that resembled the conduct of Allinson. Outside the assertion that Allinson was a friend of Sims, Wilson does not offer evidence that Sims and Allinson acted in concert to perpetuate an abusive work environment.  Wilson also fails to present facts that raise an

---

[51]Doc. No. 41-1.

[52]Doc. No. 38-1, p. 2.

inference that there is a connection between Allinson's conduct in 1996 and 1997 and the alleged conduct of co-workers that took place through April 2001.  Because there is no reasonable inference of a connection -- Allinson's conduct is not subject to the continuing violation doctrine.  The hostile work environment claim based on Allinson's conduct is time-barred.

With respect to the conduct that occurred while Sims was Wilson's supervisor, there is no evidence raising an inference connecting Sims' conduct to the next supervisor-- Alexander. In fine, there is insufficient evidence creating a reasonable inference that Sims and Alexander acted in concert to sustain a continuing hostile work environment.  Wilson's evidence failed to raise an inference that the hostility she experienced was the result of an accepted policy or practice.  Therefore, the hostile work environment claim related to events that occurred during Sims' supervision are also time-barred.

Because Wilson was working for Alexander when she filed her informal complaint in April 2001, any allegations of improper conduct in this time period are not barred--including allegations that Wilson was ostracized, labeled a troublemaker, given a greater workload, subjected to heightened scrutiny, and denied privileges.[53]  However, allegations that she was denied promotions, lateral transfers and training opportunities are barred because they are specific adverse actions.

### 3.    Prima Facie Case

### a.  Authority

In order to establish a *prima facie* case of hostile work environment, Wilson must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of

---

[53]*See Spain v. Gallegos* 26 F.3d 439 (3rd Cir. 1994)(allegations that Plaintiff was treated as an outcast were found to support a hostile work environment claim).

her employment; and  (5) Defendant knew or should have known of the harassment and failed to take proper remedial action.[54]

The fourth element involves both objective and subjective components. The harassment must be "severe or pervasive enough to create an objectively hostile or abusive work environment" and the victim must subjectively believe her working conditions have been altered.[55]  A plaintiff can prove an employer's knowledge of harassment by showing she complained to higher management or by showing that the harassment was pervasive enough to charge the employer with constructive knowledge.[56]

An objectively hostile work environment is one that a reasonable person would find offensive.[57]  There is no bright line between sexual harassment and merely unpleasant conduct.[58] The "totality of the circumstances" is looked at to determine whether there is a hostile work environment.[59]  The factors that are examined include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employees work performance.[60]   Simple teasing, offhand comments, and isolated incidents will not amount to

---

[54]*Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005).

[55]*Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21-22 (1993).

[56]*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

[57]*Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998).

[58]*Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997).

[59]*Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999).

[60]*Howard*, 149 F.3d at 893.

discriminatory changes in the terms and conditions of employment.[61]  Long and pervasive

mistreatment is more likely to be considered severe.[62]

The Seventh Circuit found that a plaintiff may establish a Title VII violation if the

harassment denies an employee the right to participate in the work place on equal footing with

similarly situated employees.[63] Applying this standard,  the Seventh Circuit found that increasing

an employee's workload in comparison with similarly situated co-workers could amount to

creating a hostile work environment.[64]

### b.  Analysis

Wilson contends that she was ostracized, assigned disproportionate workloads,

subjected to increased scrutiny, and denied privileges enjoyed by other employees.[65]  This

treatment reportedly persisted on "almost on a daily basis."[66]

These facts are sufficient to raise an inference that Wilson was not allowed to

participate in the work environment on an equal footing.  Such allegations may amount to

creating an objectively hostile work environment.   Based on this and on the alleged

pervasiveness of the hostility, an inference is raised that the work environment affected a term or

---

[61]*Faragher*, 524 U.S. at 787.

[62]*Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003).

[63]*King v. Bd. Regents Univ. of Wisconsin System*, 898 F.2d 533, 537 (7th Cir. 1990)
(*quoting Scott v. Sears, Roebuck & Co.*, 798 F.2d 210 (7th Cir. 1986)).

[64]*Haugerud v. Amery School District*, 259 F.3d 678, 697 (7th Cir. 2001).

[65]Doc. No. 35, p. 15.

[66]Doc. No. 38-1, p. 4.

condition of Wilson's employment.[67]  Wilson has specifically claimed that the conduct had an adverse effect, and the work environment was subjectively hostile.[68]

Wilson contends that the hostile work environment was motivated by race.  Wilson asserts that other African-American employees were treated in a discriminatory fashion and also subjected to harsher discipline and greater scrutiny.  Wilson also maintains that many equally or less qualified white employees were afforded opportunities that she and other black employees were not. [69]

Defendant contends that the alleged hostility between Wilson and co-workers was not race motivated but the result of personality conflicts.[70]  However, Wilson has provided evidence of other discriminatory conduct by Defendant's employees which support a reasonable inference of racial motivation.[71]  Whether the hostile environment was due to race or inter-office politics is a material fact in dispute.

Defendant's Motion for Summary Judgment on allegations connected to conduct of Allinson and Sims is GRANTED.   Defendant's Motion for Summary Judgment based on alleged specific discriminatory actions--such as denying promotions, lateral transfers, and training opportunities-- that occurred outside the 45 day time limit is GRANTED. Defendant's

---

[67]*Singletary v. Missouri Department of Corrections*, 423 F.3d 886, 892 (8th Cir. 2005).

[68]Doc. No. 38-1, p. 4.

[69]Doc. No. 38-1, p. 2-3.

[70]Doc. No. 41-1, p. 11.

[71]Doc. No. 38-1, pp. 3, 5, and 7. (Wilson alleges that an African-American employee, Ron Greer was placed on administrative leave after a conflict with Allinson. Wilson alleges that Caucasian employees were allowed training and job opportunities that were denied to her and other African American employees).

Motion for Summary Judgment on Wilson's claim of Hostile Work Environment based on alleged continuous conduct of Alexander is DENIED.

### C.     Retaliation

Plaintiff Wilson asserts that Defendant retaliated against her for protected activity in violation of Title VII.

#### 1.  Authority

In order to establish a *prima facie* case of retaliation, Wilson must prove that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two events.[72]  The critical element in a retaliation claim is adverse employment action.[73]  It is so critical that summary judgment is appropriate if a plaintiff fails to provide sufficient facts establishing an adverse employment action.[74]

An adverse employment action is a "tangible change in duties or working conditions that constitute a *material employment disadvantage*."[75] For example-- a disciplinary warning is not an adverse employment action;[76] a poor performance rating is not an adverse action (unless a plaintiff shows a clear link to a detrimental result);[77] "an unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the

---

[72]*Box v. Principi*, ___ F.3d ___, 2006 WL 827131 at 4 (8th Cir. March 31, 2006).

[73]*Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031 (8th Cir. 2002).

[74]*Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005).

[75]*Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (emphasis added).

[76]*Baucom*, 428 F.3d at 768.

[77]*Spears v. Missouri Department of Correction & Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000).

terms or conditions of the recipient's employment."[78]  The denial of essential on-the-job training, that leaves a plaintiff feeling less competent, and deprives her of beneficial experience when seeking promotions, can be reasonably considered an adverse employment action.[79]

### 2.  Analysis

Wilson's April 2001 EEO complaint is a protected activity and satisfies the first element of the *prima facie* case.   In her response to the Motion for Summary Judgment, Wilson asserts that she is not claiming she was denied training as a result of the protected activity.[80]  But, Wilson asserts that her treatment by Alexander became "worse" after she had engaged in the protected activity.  This isn't sufficient to make her case--she does not provide adequate evidence that Alexander's treatment resulted in a material employment disadvantage.  The vague assertion that the relationship with her supervisor went downhill, is not enough to create a reasonable inference of a tangible adverse employment action.  Motion for Summary Judgment on Wilson's retaliation claim is GRANTED.

### IV.  CONCLUSION

For the reasons stated:

Motion for Summary Judgment on Plaintiffs Wilson and Settles' Disparate Treatment Claims is DENIED.

Motion for Summary Judgment on Separate Plaintiff Wilson's Hostile Work-Environment Claims is GRANTED in part and DENIED in part.

---

[78]*Id.*

[79]*Wedow v.  City of Kansas City, Missouri*, 442 F.3d 661 (8th Cir.  2006).

[80]Doc.  No.  35, p.  31.

Motion for Summary Judgment on Separate Plaintiff Wilson's Retaliation Claim is GRANTED.

Motion to Dismiss is denied as moot.

IT IS SO ORDERED this 29th day of August, 2006.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE